# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1396 | **DATE** | 6/9/2003 |
| **CASE TITLE** | Beverage Realty, Inc. vs. Chatham Club, LLC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Beverage's Rule 54(b) motion must be and is granted. (58-1, 58-2) This action will proceed on the remaining claim in the case, and a status hearing is set for 9 a.m. June 12, 2003 to discuss the procedures and timetable for that purpose.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUN 10 2003 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 64 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 6/9/2003 | |
| SN | courtroom deputy's initials | date mailed notice SN mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
03 JUN -9 PM 4:50

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEVERAGE REALTY, INC., )
)
        Plaintiff, )
)
v. ) No. 01 C 1396
)
CHATHAM CLUB, LLC, )
)
        Defendant. )

MEMORANDUM OPINION AND ORDER

This Court's May 21, 2003 memorandum opinion and order ("Opinion") explained to the litigants why it was not yet possible to resolve conclusively the Fed. R. Civ. P. ("Rule") 54(b) motion by Beverage Realty, Inc. ("Beverage") to dismiss the portion of the Chatham Club, L.L.C. ("Chatham") counterclaim that sought to recover damages based on its claimed loss of tax increment financing ("TIF") funds. That explanation concluded (Opinion at 5):

> Accordingly, unless Chatham supplements its response on or before June 4, 2003 to satisfy its burden, this Court will be constrained to grant Beverage's Rule 54(b) motion. If Beverage wishes to tender its own filing within the same time frame to identify any deficiencies on Chatham's part (independent of Beverage's asserted delays) that it believes made the execution of the Redevelopment Agreement unavailable to Chatham before Beverage satisfied its own obligations, it is free to do so.

Both sides have timely provided input (on June 4). But in material part Chatham has not been responsive to what was sought by the Opinion. And to the extent that it has done so, its contentions as to the signing and delivery of the Redevelopment

Agreement are unpersuasive in identifying any causal nexus to its TIF-based claim, and it has also not provided evidentiary support for an attempted fallback position on the damages issue stemming from that claim.

To begin with, Chatham attempts to squirm out from under the unambiguous admission by its own Rule 30(b)(6) designee Billie Jo Spathies ("Spathies"), as quoted in Opinion at 3 and repeated here:

> Q. Okay. Is a requirement to getting the tax increment financing that the redevelopment agreement between Chatham Club and the City be signed?
>
> A. Yes.
>
> Q. Okay. Does Chatham Club maintain that Beverage is in any way responsible for the delay in the signing of the redevelopment agreement?
>
> A. No.

This Court has read the transcript of Spathies' other testimony cited by Chatham, and it finds nothing that even arguably supports a retreat from, or even a qualification of, that flat-out acknowledgment. And Chatham's argument that the Spathies statement is only one piece of evidence to be considered with other assertedly conflicting bits of evidence is equally unpersuasive.

Most particularly, other parts of Spathies' testimony also confirm both (1) that Chatham could not receive any TIF payments until it entered into such a Redevelopment Agreement with the

City of Chicago and (2) most critically, that the City would not have entered into that document earlier in any event because of Chatham-related difficulties (the existence of uncleared liens on the property, Spathies Dep. 44-45)[1] that had no relationship to Beverage--and that was still true months after the NFR Letter was already obtained. So the conclusion must be, and this Court so holds, that Spathies' admission stands--that Beverage had no responsibility for the delay in the signing of the Redevelopment Agreement.

But Chatham says that is not the end of the story. It urges that irrespective of the issue of when TIF payments began (the issue on which it has just lost), it will get a less favorable flow of those payments over time by reason of Beverage's delay. But on that score Chatham's June 4 filing offered only Spathies' ipse dixit testimony at her Dep. 92-93 and 100, unsupported by any evidence beyond her conclusory statements.

In that respect, by contrast, Beverage addressed the subject directly by pointing out that Chatham in fact went ahead with its construction and sale of homes long before the NFR Letter was obtained--with the sale of 113 homes having closed as of June 30,

---

[1] This is entirely apart from Beverage's further contention, supported by evidence and not countered by any countersubmissions from Chatham, that if Chatham had satisfied the other conditions within its control it could have entered into the Redevelopment Agreement even without the NFR Letter that Beverage was required to obtain.

3

2000, and with another 23 homes being under contract at that date (with anticipated closings in the near future). That information comes from a communication to Chatham's lender signed by Spathies herself as Chatham's President. And the same information is confirmatory of earlier representations by Chatham that it was arranging its construction so that any problems of remediation did not affect its work.

Because all of that took place both before and without reference to any delays that might be laid at Beverage's door, no reason appears why the normal generation of real estate taxes from the properties should not have taken place--again without reference to anything ascribable to Beverage. And in turn no reason appears why that should not have produced TIF payments once the problems ascribable to Chatham and not to Beverage had been ironed out so that the Redevelopment Agreement could be signed--thus torpedoing Chatham's claim.

Now Chatham has countered with a brief June 6 transmittal in which it refers to another portion of Spathies' testimony (Dep. 47-49) and to some testimony by its other Rule 30(b)(6) designee Richard Gdowski ("Gdowski") that "I think we had somewhere around pushing $400,000 worth of tax increment financing and financing that should have been turned over already

4

that has not" (Dep. 39-40).² But those things speak to a delay in receiving the earliest TIF funds that, as already said, Chatham could not have received in any event because of its own problems (and not because of Beverage). That does not appear to alter the result.

With all of that true, and with multiple opportunities having been given to Chatham to support its TIF-related claim, Beverage's Rule 54(b) motion must be and is granted. This action will proceed on the remaining claims in the case, and a status hearing is set for 9 a.m. June 12, 2003 to discuss the procedures and timetable for that purpose.

                                             /s/ William J. Shadur
                                             Milton I. Shadur
                                             Senior United States District Judge

Date: June 9, 2003

---

[2] Gdowski went on to say that he didn't know whether the failure to receive that $400,000 was Beverage's fault (Dep. 42).